## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

In re

RORY STEPHEN SMITH,                                Case No. 14-32910-WRS
                                                   Chapter 7

        Debtor

VALERIE MALISSA LOUCKS
and AMANDA WOODHAM

        Plaintiffs

v.                                                 Adv. Pro. No. 15-3031-WRS

RORY STEPHEN SMITH

        Defendant

## MEMORANDUM OPINION

This adversary proceeding is before the Court on Defendant Rory Smith's motion to dismiss the complaint of Plaintiffs Valerie Loucks and Amanda Woodham. (Doc. 6). The Defendant is the debtor in the underlying Chapter 7 bankruptcy. The Plaintiffs seek a determination that their claims against the Defendant are non-dischargeable under 11 U.S.C. § 523(a)(6). For the reasons set forth below, the Defendant's motion is GRANTED and this case is DISMISSED with prejudice.

## I.  FACTS & PROCEDURAL HISTORY

As this case is before the Court on a motion to dismiss, the Court takes all facts pled in the complaint to be true.

## A. The Parties

Rory Smith ("Smith"), the defendant in this case and the debtor in the underlying bankruptcy case, owned or controlled several entities formed for the purpose of operating a chain of Shoney's restaurants throughout the Southeast. These entities were Sunrise USA, Inc. ("Sunrise"), Restaurant Help, Inc. ("RHI"), Service Solutions, Inc. ("SSI"), and Shorest, LLC ("Shorest"). Of particular importance to this litigation, Shorest and RHI operated a Shoney's restaurant in Clanton, Alabama.

Plaintiffs Valerie Loucks and Amanda Woodham (collectively, "Plaintiffs") were employees of the Shoney's located in Clanton. According to the complaint, certain managers and co-workers of the Plaintiffs "frequently touched Woodham's back, neck, and shoulders in a sexual manner . . . that Woodham did not welcome or invite[,] . . . repeatedly harassed Woodham because of her gender, . . . frequently touched and hugged Woodham while making sexual comments about each of their bodies[,] . . . [and] touched Woodham on her side, shoulder and buttocks[.]" (Doc. 1, ¶ 24). These same managers and co-workers subjected Loucks to similar conduct.[1] (Doc. 1, ¶ 26). As a result of the conduct from these people, the Plaintiffs "were subjected to an ongoing sexually hostile work environment with harassment in the form of unlawful touching, sexually inappropriate language, requests for sexual favors, and inappropriate sexual comments that demeaned, ridiculed and embarrassed Plaintiffs, all because of their gender." (Doc. 1, ¶ 28).

---

[1] The complaint references a Title VII suit that the Plaintiffs filed in district court that contains more explicit detail of the conduct the Plaintiffs suffered. That litigation will be discussed extensively below. Because this case ultimately turns on who engaged in the conduct and not what the conduct was, the Court will not divulge the more unpleasant details here.

The complaint also alleges that "the workplace was sexually hostile to all female employees, . . . there was no sexual harassment policy or reporting procedure for female employees, and . . . the employees were not trained on sexual harassment issues. . . . [T]he lack of policy and training at [Smith]'s companies fostered and encouraged this sexually hostile environment. Plaintiffs complained of the sexual harassment to management personnel and to [Smith], to no avail." (Doc. 1, ¶ 28).

The complaint does not allege that Smith engaged in this conduct himself, but it does allege he was aware of it and took no action to stop it. The Plaintiffs filed claims of gender discrimination and sexual harassment with the Equal Employment Opportunity Commission ("EEOC") against certain managers and co-workers in August 2011. The Plaintiffs were subsequently subjected to retaliation and a hostile work environment. The EEOC sent Plaintiffs notices of a "Right to Sue" in January 2012. Woodham ultimately resigned her position, while Loucks was "constructively terminated."

## B. The District Court Litigation

The Plaintiffs sued Shorest and RHI in the District Court for the Middle District of Alabama in April 2012, alleging 7 counts: sexual harassment (quid pro quo and hostile environment), gender discrimination, retaliation, negligent hiring and retention, invasion of privacy, assault and battery, and intentional infliction of emotional distress. (M.D. Ala. Case No. 12-00304-WHA, Doc. 3). In May 2013, on the eve of trial, Shorest filed Chapter 11 bankruptcy in the Bankruptcy Court for the Middle District of Tennessee; this case was quickly converted to Chapter 7 and Shorest was liquidated. (Bankr. M.D. Tenn. Case No. 13-04097-MFH).

The Plaintiffs resumed their sexual harassment suit against RHI. In October 2013, again on the eve of trial, RHI filed Chapter 7 bankruptcy in the Bankruptcy Court for the Middle

-3-

District of Tennessee; however, this case was dismissed for the debtor's failure to appear at a meeting of creditors. (Bankr. M.D. Tenn. Case No. 13-08608-KML). The Plaintiffs reinstated their suit against RHI and, in February 2014, amended their complaint to add Smith, Sunrise, and SSI as defendants. (M.D. Ala. Case No. 12-00304-WHA, Doc. 92).

RHI's counsel had previously withdrawn from representation, and none of the sexual harassment defendants obtained new counsel or answered the amended complaint. In June 2014, the district court entered default judgment against Smith, Sunrise, RHI, and SSI. (M.D. Ala. Case No. 12-00304-WHA, Doc. 99). The defendants then obtained new counsel and moved to set aside the default. The district court denied the motion and scheduled a hearing to determine damages for November 3, 2014. RHI, SSI, Sunrise, and Smith each filed Chapter 7 bankruptcy in this Court on October 24, 2014. (Case Nos. 14-32907; 14-32908; 14-32909; and 14-32910).

## C. Adversary Proceeding

On May 4, 2015, the Plaintiffs initiated this adversary proceeding against Smith, seeking a determination that their claims against Smith are non-dischargeable because they stem from willful and malicious injury pursuant to 11 U.S.C. § 523(a)(6).[2] (Doc. 1). Smith moves to dismiss, asserting that this Court lacks subject-matter jurisdiction and that the Plaintiffs have failed to state a claim for which relief can be granted because Smith's conduct was not "willful." (Doc. 6). The Plaintiffs respond that § 523(a)(6) does not require the existence of an

---

[2] Normally, a claim seeking exception from discharge due to willful and malicious injury must be brought within 60 days of the first date set for the meeting of creditors. 11 U.S.C. § 523(c)(1); FED. R. BANKR. P. 4007(c). In this case, the Court granted Plaintiffs an extension until May 4, 2015. (Case No. 14-32910, Doc. 75). The Plaintiffs also sought a denial of discharge for a false oath pursuant to 11 U.S.C. § 727(a)(4). However, they consented to dismissal of that claim in their response to Smith's motion to dismiss. (Doc. 10).

-4-

independent intentional tortious act, and argue that Smith's obstructionist use of bankruptcy was willful and malicious. (Doc. 10). They also argue that Smith is precluded from challenging the merits of their complaint under the doctrine of collateral estoppel. (Doc. 10). Smith responds that filing bankruptcy is not willful and malicious, and that collateral estoppel should not apply because the issues were not actually litigated in district court. (Doc. 11).

## II. LAW

The issues are (1) whether this Court is barred by the district court's entry of default judgment and the doctrine of collateral estoppel from considering the merits of Smith's motion to dismiss, and (2) whether a claim for willful and malicious injury can be based on a debtor's vicarious liability for sexual harassment. First, the Court will consider its jurisdiction and adjudicatory power. Second, the Court will discuss the standard of review for a motion to dismiss. Third, the Court will address the Plaintiffs' collateral estoppel argument. Fourth, the Court will consider the merits of Smith's motion to dismiss.

### A. Jurisdiction and Adjudicatory Power

Rule 12(b)(1) of the Federal Rules of Civil Procedure, as incorporated by FED. R. BANKR. P. 7012(b), requires this Court to dismiss cases in which it lacks subject-matter jurisdiction. Though Smith asserts Rule 12(b)(1) as a basis for dismissal, he does not provide any legal or factual support for his assertion.

The district court has "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). The district court is authorized by 28 U.S.C. § 157(a) to refer all cases under title 11, arising under

-5-

title 11, or arising in or related to a case under title 11 to the bankruptcy court of that district, and the district court has done so pursuant to its General Order of Reference dated April 25, 1985. "A title 11 proceeding is anything that occurs within a case encompassing what are now called contested matters, adversary proceedings, and plenary actions under the current bankruptcy law." Bank United v. Manley, 273 B.R. 229, 235 (N.D. Ala. 2001) (internal quotations and ellipsis omitted). "The 'arising in a case under' category is generally thought to involve administrative-type matters, [or] matters that could only arise in bankruptcy." Continental Nat'l Bank v. Sanchez (In re Toledo), 170 F.3d 1340, 1345 (11ᵗʰ Cir. 1999) (internal citation and quotation omitted).

An adversary proceeding seeking a determination of non-dischargeability is clearly a matter that could only arise in bankruptcy. Therefore, this Court has jurisdiction "arising in [a case] under title 11" pursuant to 28 U.S.C. § 1334(b), and Smith's motion to dismiss for lack of subject-matter jurisdiction must be denied.

Beyond its jurisdiction to hear this case, the Court must also consider its authority to enter a final order. A bankruptcy court may enter final orders on all "core proceedings" properly referred to it by the district court. 28 U.S.C. § 157(b)(1). Core proceedings include "determinations as to the discharge of particular debts[.]" 28 U.S.C. § 157(b)(2)(I). Because this is a "core proceeding," and because it does not implicate the Article III concerns raised in Stern v. Marshall, ___ U.S. ___, 131 S. Ct. 2594, 2611-19 (2011), the Court has authority to enter a final order in this case. This is a final order.

**B. Standard of Review for a Motion to Dismiss**

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a court to dismiss complaints that fail to "state a claim upon which relief can be granted." The Court's analysis of a complaint in the context of a motion to dismiss is a two-step process. First, the Court must identify, and cull, pleadings that are mere legal conclusions or "[t]hreadbare recitals of the elements of a cause of action," for such pleadings "are not entitled to the assumption of truth." Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. at 679.

"[S]tating such a claim requires a complaint with enough factual matter (taken as true)" "to raise a right to relief above the speculative level," i.e., the complaint must be "plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. A "well-pleaded complaint may proceed even if it strikes a savvy judge that the actual proof of those facts is improbable, and that a recovery is very remote and unlikely." Twombly, 550 U.S. at 556 (internal quotation marks omitted).

At this procedural posture, the Court must assume that the Plaintiffs' managers and co-workers engaged in the conduct alleged, and that Smith knew about it and did nothing. The Plaintiffs' collateral estoppel argument, if valid, would preclude Smith from challenging the merits of their complaint. Therefore, the Court will consider it first.

## C. Collateral Estoppel

The Plaintiffs argue that Smith is precluded from challenging the merits of their complaint by the district court's default judgment order. "Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." Montana v. United States, 440 U.S. 147, 153 (1979). A party asserting collateral estoppel "must establish that (1) the issue at stake is identical to the one involved in the earlier proceeding; (2) the issue was actually litigated in the earlier proceeding; (3) the determination of the issue must have been a critical and necessary part of the earlier judgment; and (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue."[3] Tampa Bay Water v. HDR Eng'g, Inc., 731 F.3d 1171, 1180 (11th Cir. 2013) (internal quotation marks and ellipsis omitted). The doctrine of collateral estoppel applies in discharge exception proceedings pursuant to § 523(a). Grogan v. Garner, 498 U.S. 279, 284 n.11 (1991).

The Plaintiffs have clearly met their burden on the first and fourth elements. Allegations of sexual harassment, retaliation, assault and battery, and intentional infliction of emotional distress encompass the elements for willful and malicious injury. *See, e.g.*, Ludwig v. Martino (In re Martino), 220 B.R. 129, 132-33 (Bankr. M.D. Fla. 1998) (sexual harassment judgment against debtor precluded her defense of the plaintiff's § 523(a)(6) claim). Likewise, Smith had

---

[3] "If the prior judgment was rendered by a state court, then the collateral estoppel law of that state must be applied to determine the judgment's preclusive effect." St. Laurent v. Ambrose (In re St. Laurent), 991 F.2d 672, 675-76 (11th Cir. 1993). The prior default judgment in this case was rendered by a federal court, so federal collateral estoppel law applies.

-8-

several months to answer the complaint; as an individual, he did not need to be represented by counsel to appear in court. He had a full and fair opportunity to litigate in district court. However, the other two elements require closer examination.

**1.  Smith "Actually Litigated" in District Court.**

Smith argues that the issue of willful and malicious injury was not "actually litigated" in district court. "Ordinarily a default judgment will not support the application of collateral estoppel because '[i]n the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated.'" Bush v. Balfour Beatty Bahamas, Ltd. (In re Bush), 62 F.3d 1319, 1323 (11ᵗʰ Cir. 1995) (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 27 cmt. e (1982)) (alteration in original). Smith points to Angus v. Wald (In re Wald), 208 B.R. 516 (Bankr. N.D. Ala. 1997), for support. In Wald, a contractor had been sued in state court for fraud, and had filed an answer and appeared at one hearing before suffering default judgment; the entire litigation had lasted four months. Wald, 208 B.R. at 519. The bankruptcy court determined that the issue had not been actually litigated in state court and refused to apply collateral estoppel. Id. at 552-54. Likewise, Smith posits that in the district court case, he was sued by the Plaintiffs in their amended complaint and did nothing until after the court entered default judgment against him.

Smith has a strong argument on paper, but the Court need not wear blinders as to what really happened in the district court case. "Where a party has substantially participated in an action in which he had a full and fair opportunity to defend on the merits, but subsequently chooses not to do so, and even attempts to frustrate the effort to bring the action to judgment, it is not an abuse of discretion for a district court to apply to the doctrine of collateral estoppel to

-9-

prevent further litigation of the issues resolved by the default judgment in the prior action."

Bush, 62 F.3d at 1325 (footnote omitted). "'A party who deliberately precludes resolution of factual issues through normal adjudicative procedures may be bound, in subsequent, related proceedings involving the same parties and issues, by a prior judicial determination reached without completion of the usual process of adjudication. *In such a case the "actual litigation" requirement may be satisfied by substantial participation in an adversary contest in which the party is afforded a reasonable opportunity to defend himself on the merits but chooses not to do so*.'" Id. at 1324 (quoting FDIC v. Daily (In re Daily), 47 F.3d 365, 368 (9th Cir. 1995)) (emphasis in original). In Bush, the debtor had defended a fraud claim in district court – mainly by obstructing discovery – for two years before suffering default judgment. Id. at 1321-22. When the debtor filed bankruptcy and the creditor claimed an exception to discharge under § 523(a)(2)(A), the bankruptcy court held that the default judgment precluded the debtor's defense of the claim and the Eleventh Circuit affirmed. Id. at 1322, 1325.

Upon consideration that Smith owned or controlled Shorest and RHI, his conduct in the district court litigation resembles the conduct in Bush far more closely than the conduct in Wald. Shorest and RHI – acting at Smith's behest – strenuously litigated in district court for over two years and filed bankruptcy every time a trial date approached. Smith himself filed the instant bankruptcy on the eve of a damages hearing. Moreover, mitigating factors such as an inconvenient forum or a lack of money at stake are not present here. *See* Bush, 62 F.3d at 1325 n.8. Smith, or entities he controlled, owned multiple Shoney's restaurants in this district, and the Plaintiffs claim a substantial amount of money – so substantial, in fact, that Smith has spent over

-10-

$275,000 defending their claims.  (Doc. 11, p. 5).  Under these circumstances, it is disingenuous for Smith to argue that the district court case was not "actually litigated."

**2.  Determination of Whether Smith's Conduct was "Willful" was Not a Critical and Necessary Part of the Default Judgment.**

A determination of whether Smith's conduct was "willful and malicious," as a critical and necessary part of the default judgment, requires that the district court could not have reached the judgment by an alternative determination.  Miller v. Held (In re Held), 734 F.2d 628, 629 (11th Cir. 1984).  In Held, the debtors had converted the plaintiff's jewelry and lost a jury verdict that awarded the plaintiff compensatory and punitive damages.  Held, 734 F.2d at 629.  The jury had been charged that it could award punitive damages if the debtors' conduct was "willful or showed a reckless indifference" to the rights of the plaintiff.  Id.  Because the verdict did not specify which type of intent had been found, and because recklessness is insufficient to prove "willful and malicious injury" under § 523(a)(6), the punitive damages award did not preclude the bankruptcy court from subsequently determining that the debtors' conduct was not willful. Id. at 630.

The district court's default judgment order made no specific findings regarding Smith's willfulness or maliciousness.  (Case No. 2:12-cv-00304-WHA, Doc. 99).  Also, the amended complaint included a claim for negligent hiring and training, which certainly does not meet the requirement for willful and malicious injury.  *See* Kawaauhau v. Geiger, 523 U.S. 57, 61-62 (1998).

-11-

However, when considering whether determination of an issue was a critical and necessary part of a judgment, a court should look to the entire record. Sunco Sales, Inc. v. Latch (In re Latch), 820 F.2d 1163, 1166 (11th Cir. 1987). In Latch, the debtors had been found liable for civil theft due to their misappropriation of proceeds from a wire transfer, and the jury had answered 47 interrogatories regarding the debtors' culpability. Latch, 820 F.2d at 1164. The bankruptcy court held that the judgment debt was dischargeable after determining that the jury's response of "yes" to an interrogatory asking whether the debtors had acted "with malice, moral turpitude, wantonness, willfulness or reckless indifference" was ambiguous. Id. at 1165. The Eleventh Circuit affirmed the district court's reversal, explaining that the bankruptcy court erred by reading the interrogatory out of context, and by not considering the whole record to resolve the ambiguity. Id. at 1166. It determined that the bankruptcy court was precluded from determining that the judgment debt did not arise out of willful or malicious injury because the elements of civil theft necessarily included willful and malicious intent; the mere fact of conviction was sufficient to conclusively establish that the debtors had acted willfully and maliciously.

Because Latch instructs the Court to consider the whole record, the Court will look to the amended complaint to determine what factual findings the district court made. The amended complaint alleged the following specific facts about Smith:

> 16. Curtis Baker and Sunrise leased to Rory S. Smith and RHI, Inc. the real property and rights to operate the Shoney's Restaurant in Clanton on September 1, 2001.
>
> 17. Rory S. Smith was the controlling shareholder in RHI at all times relevant to this lawsuit.

-12-

19.  In 2005, Smith purchased a controlling interest in Sunrise from Dr. Curtis Baker and at that point Rory S. Smith was the controlling shareholder/owner of RHI and Sunrise.

22.  As soon as Smith and RHI announced that they were ceasing operations of the Shoney's in Clanton, Service Solutions immediately announced that it would continue operating the Shoney's in Clanton and extended offers of employment to those persons formerly working for RHI and Smith.

33.  Smith, [sic] is aware of the continuous harassment of [Valerie Loucks] yet has done nothing to stop it.

48.  Weeks later, Dr. Baker reported back [to Loucks] that he had spoken with Smith about the sexual harassment, but that Smith's response had been focused on discovering who had voiced a complaint about the sexual harassment, not that there were actual complaints of sexual harassment.  Thereafter, no sexual harassment training or meetings were held at the restaurant until after Loucks filed her charge of discrimination with the EEOC.

54.  Smith, [sic] is aware of the continuous harassment [of Amanda Woodham], yet has done nothing to stop it.

63.  Woodham complained to Smith, [sic] that [District Manager John] Pittman's behavior was unprofessional and inappropriate, explaining that one minute Pittman would be leering at her and telling her how pretty she was and the next minute yelling at her. Smith responded that she has a "get out of jail free card" if she wanted to physically beat Pittman up.

69.  Weeks later, Dr. Baker reported back [to Woodham] that he had spoken with Smith about the sexual harassment, but that Smith's response had been focused on discovering who had voiced a complaint about the sexual harassment, not that there were complaints or correcting the environment and workplace. Thereafter, no sexual harassment training or meetings were held at the restaurant until after Woodham filed her charge of discrimination with the EEOC.

-13-

(Case No. 2:12-cv-00304-WHA, Doc. 92). All of the other specific allegations in the amended

complaint describe the conduct of other people, and the allegations in the amended complaint's

various claims vaguely refer to the "Defendants" (including Sunrise, RHI, and SSI).

The Court concludes from this record that a determination of Smith's "willfulness" was

not critical or necessary to the district court's judgment. "A willful and malicious injury under

Section 523(a)(6) is confined to acts, such as intentional torts, done with an actual intent to cause

injury as opposed to acts done intentionally that result in injury." Bracciodieta v. Raccuglia (In

re Raccuglia), 464 B.R. 477, 483 (Bankr. N.D. Ga. 2011). "This distinction is important because

reckless conduct resulting in an injury that evidences an entire want of care or conscious

indifference to the consequences is not sufficient under the legal standard established in this

exception to discharge." Id. "Stated differently, Section 523(a)(6) addresses only those

situations in which a debtor desired the injury caused by his conduct. It does not reach a

debtor's failure to meet a duty of care that results in injury to someone else." Id. The court in

Raccuglia refused to give preclusive effect to a default judgment that did not specify between

claims for fraud, negligence, and breach of contract, when the operative facts were that the

debtor had failed to properly install a retainer wall. Id. at 484.

Like the debtor in Raccuglia, Smith owed a duty of care to the Plaintiffs, but his failure to

meet that duty of care is not sufficient to establish willfulness under § 523(a)(6). In the amended

complaint, the specific factual allegations regarding Smith merely show that he knew the

Plaintiffs were being subjected to sexual harassment by his employees. The amended complaint

does not allege that he engaged in this conduct himself.

-14-

"An employer is subject to vicarious liability to a victimized employee for an actionable

hostile environment created by a supervisor with immediate (or successively higher) authority

over the employee." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765 (1998). At a

minimum, Smith was surely subject to vicarious liability for the conduct of his employees.

However, vicarious liability does not rise to the level of willful intent for a § 523(a)(6) claim

because it is one party's liability for the conduct of another. Thatcher v. Austin (In re Austin),

36 B.R. 306, 311 (Bankr. M.D. Tenn. 1984). As Austin, the seminal case on this point,

eloquently explains:

> There is nothing in the language or the legislative history of §
> 523(a)(6) to suggest that common law notions of vicarious or
> imputed liability are appended to the statutory exceptions to a
> discharge in bankruptcy. Quite the contrary, application of
> vicarious liability would effectively vitiate the § 523(a)(6)
> requirement that only debts resulting from the *willful* acts
> committed *by the debtor* be nondischargeable. Vicarious liability
> as a social policy or legal fiction ignores the master's knowledge
> and imposes fault and financial responsibility without regard to
> culpability or intent. Section 523(a)(6) is founded on the contrary
> notion that only a debt resulting from the deliberate acts of the
> debtor can be excepted from discharge in bankruptcy. In the
> absence of clear statutory exception for 'vicarious acts,' the
> legislative intent to permit a broad discharge in bankruptcy should
> not be emasculated by common law tort principles.

Id. at 311-12 (emphasis in original). The rule announced in Austin has been consistently

followed. *See, e.g.*, Becker v. Galan (In re Galan), 455 B.R. 214, 223 (Bankr. D. Idaho 2011);

Sells v. Porter (In re Porter), 363 B.R. 78, 90 n.5 (Bankr. E.D. & W.D. Ark. 2007); Giuliano v.

Albano (In re Albano), 143 B.R. 323, 325 (Bankr. D. Conn. 1992); *cf.* Hamilton v. Nolan (In re

Nolan), 220 B.R. 727, 731-32 (Bankr. D.D.C. 1998). A willful act within the ambit of §

523(a)(6) must be committed by the debtor himself.

-15-

Based on the amended complaint, it is entirely possible – indeed, probable – that the

district court determined that Smith's employees sexually harassed and battered the Plaintiffs

and that Smith is vicariously liable for their actions.  Because that possibility exists, the

Plaintiffs' collateral estoppel argument fails.

### D.  Willful and Malicious Injury

The Plaintiffs base their § 523(a)(6) claim on the same operative facts as those asserted in

the district court, and it fails for the same reasons their collateral estoppel argument fails.

A debt arising out of a "willful and malicious injury by the debtor to another entity or to

the property of another entity" is non-dischargeable.  11 U.S.C. § 523(a)(6).  "A debtor is

responsible for a 'willful' injury when he or she commits an intentional act the purpose of which

is to cause injury or which is substantially certain to cause injury."[4]  Maxfield v. Jennings (In re

Jennings), 670 F.3d 1329, 1334 (11th Cir. 2012).  In the context of § 523(a)(6),

"nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or

intentional *act* that leads to injury."  Kawaauhau, 523 U.S. at 61 (emphasis in original).  Thus,

"recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)."  Id. at

64.  Although conduct subject to § 523(a)(6) contemplates, like an intentional tort, "that the actor

intend the *consequences* of an act, not simply the act iself[,]" id. at 61-62 (internal quotation

---

[4]  There is a circuit split on whether "substantially certain" is a subjective standard
requiring the "creditor to prove that a debtor actually knew that the act was substantially certain
to injure the creditor," or whether it is an objective standard requiring the "creditor to show only
that a debtor's act was in fact substantially certain to cause injury."  Kane v. Stewart, Tilghman,
Fox, & Bianchi, P.A. (In re Kane), 755 F.3d 1285, 1293 (11th Cir. 2014); *compare* Ormsby v.
First Am. Title Co. of Nev. (In re Ormsby), 591 F.3d 1199, 1206 (9th Cir. 2010) (subjective
standard), *with* Schlonik v. Rapid Settlements, Ltd. (In re Schlonik), 670 F.3d 624, 630 (5th Cir.
2012) (objective standard).  The Eleventh Circuit has not weighed in on this distinction, *see*
Kane, 755 F.3d at 1293, and the Court need not decide the issue here.

-16-

marks omitted, emphasis in original), a creditor need not actually prove that a debtor has committed an intentional tort in order to satisfy § 523(a)(6).  Kane v. Stewart, Tilghman, Fox, & Bianchi, P.A. (In re Kane), 755 F.3d 1285, 1296-97 (11th Cir. 2014).

In addition to the requirement that a debtor's conduct be "willful," § 523(a)(6) also requires that it be "malicious."  "'Maliciousness' means 'wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will.'"  Jennings, 670 F.3d at 1334 (quoting In re Walker, 48 F.3d 1161, 1164 (11th Cir. 1995)).  "To establish malice, 'a showing of specific intent to harm another is not necessary.'"  Id. (quoting Lee v. Ikner (In re Ikner), 883 F.2d 986, 991 (11th Cir. 1989)).  "Constructive or implied malice can be found if the nature of the act itself implies a sufficient degree of malice."  Ikner, 883 F.2d at 991; accord Navistar Fin. Corp. v. Stelluti (In re Stelluti), 94 F.3d 84, 87 (2d Cir. 1996) (malice "is implied when anyone of reasonable intelligence knows that the act in question is contrary to commonly accepted duties in the ordinary relationships among people, and injurious to another").

Aside from "willful" intent and "maliciousness," § 523(a)(6) also requires that the debtor's conduct injure another entity or its property.  The Plaintiffs must prove all elements of § 523(a)(6) by a preponderance of the evidence to except their claims from discharge.  Grogan, 498 U.S. at 291.

The Court has no difficulty concluding that both the complaint in this case and the amended complaint in district court state a claim for sexual harassment.  Most courts agree that sexual harassment engaged in by the debtor himself can be "willful" within the meaning of § 523(a)(6).  E.g., Jones v. Svreck (In re Jones), 300 B.R. 133, 140 (1st Cir. BAP 2003); Porter, 363 B.R. at 89; cf. Voss v. Tompkins (In re Tompkins), 290 B.R. 194, 199 (Bankr. W.D.N.Y.

2003) (noting that Title VII sexual harassment "is inherently an intentional tort that falls within" § 523(a)(6), but determining that the debtor's conduct did not rise to sexual harassment); *contra* Sanger v. Busch (In re Busch), 311 B.R. 657, 669-70 (Bankr. N.D.N.Y. 2004) (holding that sexual harassment is not an intentional tort for which a debtor intends to injure his victim within the meaning of § 523(a)(6)).

Also, "malice is inherent in finding that the debtor is liable for sexual harassment." Busch, 311 B.R. at 668. "Because sexual harassment is both illegal and morally reprehensible, it is impossible to conceive of an actionable sexual harassment case against an individual employer where that employer's conduct could be construed as anything other than wrongful and without just cause or excuse." Id. (internal quotation marks omitted). "[T]he doctrine of vicarious liability cannot shield a debtor from a finding of malice" under § 523(a)(6) "if the debtor had notice of an injury being inflicted by its agents or employees and could have, but did not, prevent it." Yash Raj Films (USA), Inc. v. Akhtar (In re Akhtar), 368 B.R. 120, 133 (Bankr. E.D.N.Y. 2007).

The Plaintiffs have alleged sufficient facts to show that they were injured by the sexual harassment and that Smith acted maliciously toward them. They have alleged sufficient facts to show that the managers and co-workers who sexually harassed them did so with the intent to injure them. However, they have not alleged facts to show that Smith intended to injure them. At most, the Court can infer from the complaint that Smith was vicariously liable for the sexual harassment directed at the Plaintiffs; this applies to the Plaintiffs' other claims as well. Vicarious liability, without more, cannot form the basis for a determination that Smith's conduct was "willful" within the meaning of § 523(a)(6). *E.g.* Austin, 36 B.R. at 311; *infra* Part II, C, 2.

The Plaintiffs also argue that Smith willfully and maliciously injured them by filing bankruptcy. Their argument is misplaced. The filing of bankruptcy is not malicious or injurious in and of itself. To hold otherwise would eviscerate the protections of the bankruptcy system. To the extent the Plaintiffs object to the timing or purpose of Smith's bankruptcy filing, § 523(a)(6) is not the proper vehicle to make that objection. *Cf.* 11 U.S.C. § 707(a) ("The court may dismiss a case under [Chapter 7] only after notice and a hearing and only for cause").

### III. CONCLUSION

The Plaintiffs have not stated a claim for which relief can be granted under 11 U.S.C. § 523(a)(6). Because the Plaintiffs' claims against Smith stem only from vicarious liability, their claims are not excepted from discharge. Therefore, Smith's motion to dismiss must be granted. This adversary proceeding is DISMISSED WITH PREJUDICE.

August 27, 2015.

William R. Sawyer
Chief United States Bankruptcy Judge